AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. 3:21-MJ-376 |
| Subject Devices a through g seized at 116 Swainford Drive, Heath, Ohio and now located at the FBI Dayton Resident Agency 7747 Clyo Road, Centerville, Ohio. | ) |

## APPLICATION FOR A SEARCH WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 2113(a) & (b) | Armed Bank Robbery |
| 18 U.S.C. § 924(c)(A)(ii) | Use of a Firearm During a Crime of Violence |
| 18 U.S.C § 922(g)(1) | Felon in Possession of a Firearm |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA Nicholas A. Graziosi, FBI

*Printed name and title*

Sworn to before me and signed in my presence via facetime.

Date: 10/18/21

City and state: Dayton, Ohio

Peter B. Silvain, Jr.
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF SUBJECT DEVICES a THROUGH g SEIZED AT 116 SWAINFORD DRIVE, HEATH, OHIO, CURRENTLY LOCATED AT **FBI DAYTON RESIDENT AGENCY, 7747 CLYO ROAD, CENTERVILLE, OHIO** | Case No.    3:21-MJ-376 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, **Nicholas A. Graziosi**, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—seven (7) electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am a Special Agent with the United States Federal Bureau of Investigation and have been employed as such since March of 2017.  I am currently assigned to the FBI Cincinnati Division – Dayton Resident Agency.  While employed by the Federal Bureau of Investigation, I have investigated the commission of federal crimes involving criminal offenses to include violent crimes and drug trafficking. In the course of these duties, I have participated in numerous federal search and arrest operations and conducted associated interviews which have resulted in the collection of evidence and admissions of multiple criminal violations.   The information

contained in this Affidavit is either personally known by me or relayed to me by other law enforcement officers involved in the subject investigation.

     3.    My knowledge of this investigation is based upon my own personal observations, as well as the observation and investigation conducted by other law enforcement officers knowledgeable of the facts and circumstances involved in the subject investigation. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

     4.    The individual items of property desired to be searched are listed below. Each are currently stored in a secure locked facility located at the FBI Dayton Resident Agency, 7747 Clyo Road, Centerville, Ohio.

    a. Cellular Telephone, Make iPhone, Model 11 Pro (MWAP2LL/A), Serial C39ZT7M8N6XN, IMEI 353237104889093, silver in color ("Device 1");

    b. Cellular Telephone, Make iPhone, Model 13 (MLA23LL/A); Serial MM219LDFHR, IMEI 357332360741728, black in color ("Device 2");

    c. Laptop, Make HP, Model Chromebook (14a-na0031wm), Serial 5CD045GVNJ, gray in color ("Device 3");

    d. Cellular Telephone, Make Qlink, Model VLE5, Serial 120190600005791, IMEI 869190041354126 ("Device 4");

    e. Tablet, Make Windows, Model 1645, Serial 008875760452; gray in color ("Device 5");

    f. Tablet, Make iPhone, Model A1416, Serial DYTJ3UV9DJ8T, silver in color ("Device 6"); and

    g. USB Flash Drive, blue and silver in color with tag, hand written on tag is "Terry Thompson" and "2011-053466" ("Device 7").

The above listed devices will hereinafter be collectively referred to as "the Subject Devices."

5.     The applied-for warrant would authorize the forensic examination of the Subject Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.     Beginning in July 2021 and continuing thereafter, the Affiant, as well as the other law enforcement officers, began investigating a series of bank robberies that occurred in the state of Ohio.     Investigators identified the bank robbery suspect as STEFAN CHADWICK CRAWMER.     While committing the robberies, CRAWMER displayed a black pistol style firearm, while demanding U.S. currency.  A summary of each of the bank robberies are detailed below.

7.     On July 1, 2021, at approximately 9:22 a.m., a robbery occurred at the Peoples Savings Bank, located at 618 Scioto Street, Urbana, Ohio.  According to eyewitness statements and review of bank surveillance video, the suspect entered the bank, then pulled a black gaiter face style facemask over his face and approached one of the tellers in the bank.  The suspect had a black pistol style firearm in one hand and pulled the slide back with his other hand, indicating that the suspect was loading the firearm.  During this time, the suspect demanded an amount of U.S. currency.  The teller provided to law enforcement that the suspect stated "give me 50's and 100's."  The teller complied and handed the suspect an unknown amount of U.S. currency. The suspect thereafter took the U.S. currency and exited the bank.

3

8. An audit of the teller drawer involved revealed that the suspect made out with approximately $3,350.00.

9. Bank employees described the suspect as a white male, approximately 5'10", 170-180 lbs., with short hair. The suspect was further described by bank employees as wearing a Minecraft ball cap, a black mesh gaiter style face covering, a dark quarter zip shirt and grey shorts. One of the bank employees described the suspect as having a tattoo on the lower portion on one of his calves.

10. Your Affiant conducted a search on fdic.gov and observed that the Peoples Saving Bank was listed as Federal Deposit Insurance Corporation (hereinafter "FDIC") insured with FDIC Certification No. 29975.

11. On August 7, 2021, at approximately 9:30 a.m., a robbery occurred at the Richwood Bank, located at 2454 N. Limestone Street, Springfield, Ohio. According to eyewitness statements and review of bank surveillance video, the suspect entered the entry doors of the bank unmasked. As the suspect passed through the entry doors, the suspect pulled a gray gaiter style mask up over part of his face and walked towards the teller counters. The suspect approached the teller counters and then walked between and behind the teller counters and produced a small, black pistol style firearm. The suspect then pulled back the slide of the firearm indicating that the suspect was loading the firearm. During this time, the suspect demanded an amount of U.S. currency.

12. A Richwood Bank employee provided to law enforcement that the suspect stated "give me 50's and 100's." The suspect then attempted to open a teller drawer, which was locked. The suspect told the tellers to unlock the teller drawers. The tellers complied and gave the suspect an amount of U.S. currency.

4

13.    An audit of the teller drawers involved revealed that the suspect made out with approximately $3,103.00.

14.    Richwood Bank employees provided to law enforcement that the suspect was a white male, approximately 5'10" to 6' tall, weighing approximately 160-175 lbs., 35-45 years of age, with a gray goatee. Bank employees further described the suspect as wearing a gray mask, dark gray ball cap, a Planet Fitness black tee shirt with large white lettering, black and gray cargo shorts, and dark gray New Balance shoes with an orange colored "N" on the side of the shoe. A bank employee described the suspect as having a birth mark or mole on the outside corner of his left eye at the top of the suspect's cheek. The birth mark or mole was further described by a bank employee as round, a couple shades darker than the suspect's skin, and bigger than a pencil eraser but smaller than a dime. Law enforcement reviewed bank surveillance and noted that the suspect was wearing black shorts and a single strap over the shoulder bag. Law enforcement also observed from surveillance footage that the suspect wore a dark blue ball cap with no apparent logos or writing and black sunglasses on top of the ball cap.

15.    Your Affiant conducted a search on fdic.gov and observed that the Richwood Bank was listed as FDIC insured with FDIC Certification No. 12978.

16.    On August 17, 2021, at approximately 9:41 a.m., a robbery occurred at the Civista Bank, located at 205 S. Detroit Street, West Liberty, Ohio. According to eyewitness statements and review of bank surveillance video, the suspect entered the bank, pulled up a purple gaiter style face mask covering most of his face and approached the tellers. The suspect displayed a black pistol style firearm and walked behind the counter. Law enforcement spoke with bank employees who provided a description of the suspect.

5

17.    B.M., a Civista Bank employee, observed the suspect pull up to the exterior of the bank in a white four door car. B.M. recalled the license plate of the suspect vehicle as JIA 7018. B.M. described the suspect as a white male, approximately 6' tall. After walking into the bank, the suspect pulled up, what B.M. described as a bandana, over his face. The suspect was wearing a long sleeve white tee shirt pushed up to his elbows, dark colored shorts, a hat, and a black lap top bag. The suspect was also holding a small pistol style firearm in his right hand. The suspect stated, "you know what I want" and "open your drawers." B.M. provided that the suspect took a money bag off the counter which contained business deposits. B.M. believed that the suspect was a customer and later recalled to law enforcement that she believed the suspect was STEFAN CHADWICK CRAWMER. B.M. searched CRAWMER's account and provided account details to law enforcement. B.M. provided to law enforcement that CRAWMER came into the bank on December 28, 2019, and opened an account. B.M. stated that around August of 2020, this account was overdrawn and closed. In March of 2021, CRAWMER inquired about the deposit of his stimulus check, and he was informed that his account was closed because it was overdrawn. He was advised that he needed to deposit approximately $523.26 and they would allow for him to have access to his check. The check was allowed to be deposited and they learned that he had withdrawn the remainder of the money from a Civista Bank in Akron, Ohio and closed his account. B.M. further stated that they are trained to always make eye contact with their customers and that she always studies their faces. She stated that she frequently did CRAWMER's transactions through the drive thru and the voice of the suspect was familiar to her and she believed it to be CRAWMER. B.M. also described the suspect's voice as always remaining calm even as the suspect became agitated. This struck her as also being very

6

consistent with CRAWMER, stating when he would become agitated or upset, while at the bank as a customer, his voice always remained calm.

18.     R.P., a Civista Bank employee, described the suspect as 5'5" to 6' tall. R.P. provided that the suspect walked in the front door and then pulled up a black, blue and purple gaiter style mask over his face. R.P. described the suspect as having a goatee, which she observed prior to the suspect covering his face with a mask. The suspect wore a black hat, black plastic frame glasses on top of his hat, a white plain tee shirt, black pants, and tennis shoes. The suspect also had a black pistol style firearm in his hand. R.P. provided that the suspect walked to the drive thru area and demanded money, stating "you know what I want." R.P. recognized the voice of the suspect as a bank customer, and later recalled to law enforcement that she believed the suspect that robbed the bank was STEFAN CHADWICK CRAWMER. R.P. further stated that she believed she recognized the voice as CRAWMER stating that she also was struck by how calm the suspect's voice remained which was consistent with CRAWMER when he would become agitated at the bank.

19.     A Civista Bank employee provided a copy of CRAWMER's driver's license to law enforcement which returned to a STEFAN C. CRAWMER., (DOB: xx/xx/1968), (SSN: xxx-xx-5943), 5'09, 190 lbs., hair bald, and Hazel eyes. Additionally, a Civista Bank employee provided the cell phone number that CRAWMER provided to them when his account was opened, being 804-503-6171. A law enforcement database search revealed that 804-503-6171 was associated to CRAWMER.

20.     The suspect's license plate, as recalled by Civista Bank employees, was found to have been stolen from a residence on Columbus St., in Bellefontaine on an unknown date.

7

21.     An audit of the teller drawers involved revealed that the suspect made out with approximately $1,313.90.

22.     Your Affiant conducted a search on fdic.gov and observed that the Richwood Bank was listed as FDIC insured with FDIC Certification No. 12982.

23.     A review of all three robberies revealed the following consistencies. All three robberies were committed between the approximate time frame of 9:22 a.m. and 9:41 a.m. The suspect, in each robbery, pulled up a neck gaiter face mask as entry was made into the front door of the bank. Immediately, on each occasion, the suspect approached the tellers and brandished a black pistol style firearm in his right hand. In each robbery, the suspect was wearing a baseball style hat, shorts and a long sleeve shirt with the sleeves rolled up to their elbow and another T-shirt under the long sleeve shirt. The video from the Springfield robbery captured the suspect's tennis shoes which clearly had an "N" on the side for New Balance. The suspect, in each robbery, wore multi-colored tennis shoes, with a consistent pattern on the outside of the shoe, all believed to be the New Balance shoes captured on video during the Springfield robbery. During the Richwood Bank robbery and the Civista Bank robbery the suspect had black sunglasses with reddish/orange earpieces, with the glasses sitting on top of the bill of his hat. In addition, he had a black laptop type bag draped over his shoulder. During the Richwood Bank robbery and the Peoples Savings Bank robbery the suspect cocked his firearm and stated give me fifties and hundreds.

24.     Investigators located CRAWMER's Facebook Page under the vanity name "Chad Adel". A review of photographs and videos from CRAWMER's Facebook page revealed numerous pictures in which CRAWMER was wearing a pair of New Balance tennis shoes that match the New Balance tennis shoes from the Springfield robbery and are consistent with the

8

tennis shoes worn in the Urbana and West Liberty robbery. A video posted on CRAWMER's Facebook page captured CRAWMER wearing a purple face covering that appears to be an exact match for the mask worn by the suspect in the West Liberty robbery. A photograph posted on CRAWMER's Facebook page captured CRAWMER wearing a black gaiter style face covering that is consistent with the face covering worn by the suspect in the Peoples Bank robbery and the Richwood Bank robbery. Further, CRAWMER's Facebook page revealed a picture in which CRAWMER was wearing black plastic frame sunglasses with red accents on the earpieces that match the sunglasses worn by the suspect during the Richwood Bank robbery and the Civista Bank robbery. A comparison of photographs from the Springfield robbery, wherein video surveillance captured the suspect without a mask, with pictures from CRAWMER's Facebook page revealed that CRAWMER appeared to be, or very closely resembled, the suspect from the Springfield robbery.

25.     A review of photographs posted on CRAWMER's Facebook page show CRAWMER with a tattoo on the inside of CRAWMER's left leg. As detailed above, a Peoples Savings Bank employee described the suspect as having a tattoo on the lower portion on one of the suspect's calves. Photographs posted on CRAWMER's Facebook page further show that CRAWMER has tattoos covering the majority of his left arm and tattoos on the inside of his right arm. Bank surveillance video from the bank robberies show the suspect with sleeves pulled up to the elbows. No arm tattoos are visible from bank surveillance. As further detailed in the next paragraph below, a review of CRAWMER's criminal history revealed an Alabama police report regarding a bank robbery investigation, in which CRAWMER was ultimately convicted, wherein CRAWMER attempted to cover up his tattoos with makeup.

9

26.     A state warrant, issued in the Logan County Court of Common Pleas, was served upon Facebook for account details associated with CRAWMER's Facebook account, having the vanity name "Chad Adel." A review of records revealed the same pictures previously viewed by law enforcement through an open-source search. Additionally, records revealed a post written by CRAWMER on May 20, 2021, that states "I have an awesome story for you if you want to hear... unlike no other!!! True story... 23 bank robberies.... fbi, atf, homeland security, bikers... etc... hit me up! Multi-million dollar story..." Additionally, a private message conversation between "Chad Adel" and "Donald Dean" revealed the following statements:

Chad Adel:      "Merry hat I'm interested in are bang bang and other stuff but need bang bang... kinda fucking with pale riders now."

Donald Dean: "Ok I'll get on it"

Chad Adel:      "Merry hat? Haha suppose to be what I'm interested in..."

Chad Adel:      "Haha"

Donald Dean: "Right"

Chad Adel:      "Kinda want the kind that spits out multiple stuff"

Chad Adel:      "To destroy lives... haha

27.     A review of CRAWMER's criminal history revealed that CRAWMER had been arrested for committing an armed bank robbery in Alabama. I reviewed the underlying police report compiled by the Madison, Alabama Police Department, related to their investigation into CRAWMER and his arrest, and learned the following. On September 10, 2010, an armed bank robbery occurred at the Wachovia Bank, located at 100 Hughes Rd., Madison, Alabama. Bank employees reported a white male entered the bank, pulled a grey bandana up over his face and pulled out a handgun. The suspect then stated all the money on the counter now. The suspect

10

then stated, you think this is a joke, and cocked the weapon. The suspect then ran out the door of the bank with more than $8,000 cash and fled in a silver 4 door Vehicle. Madison Police Department Officers located the vehicle and a foot pursuit ensued before CRAWMER was taken into custody. Officers noticed makeup rubbing off of CRAWMER's arms exposing tattoos. CRAWMER stated to officers that he used "Cover Girl Honey" makeup to conceal his tattoos. CRAWMER was ultimately charged and convicted for this incident in the United States District Court for the Northern District of Alabama (Case No. 5:10-CR-433). On August 27, 2021, a warrant, issued in the Logan County Court of Common Pleas, was served upon T-Mobile for customer and subscriber information, as well as call detail records and cell site location information associated with the telephone number 804-503-6171 (CRAWMER's Mobile Phone). This phone number was provided to law enforcement by Civista Bank employees as being associated with a bank account for CRAWMER. CRAWMER also has previously provided this phone number as his contact number to law enforcement during an unrelated interaction. Law enforcement has had contact with CRAWMER via 804-503-6171 as recent as August 29, 2021, during an unrelated interaction.

28. Review of T-Mobile records showed location information for CRAWMER's Mobile Phone. The records revealed that on July 1, 2021, the date of the robbery that occurred at Peoples Savings Bank, Urbana, Ohio, CRAWMER's Mobile Phone was reporting its location in the area of South Vienna, Ohio, during the duration of the robbery. South Vienna, Ohio is approximately 14 miles from People Savings Bank, located in Urbana, Ohio. Approximately three days prior to the People Savings Bank robbery, on June 28, 2021, CRAWMER's Mobile Phone was reporting its location in the area of the Peoples Savings Bank. A review of the T-

11

Mobile records revealed that CRAWMER's Mobile Phone was in the area of the Peoples Savings Bank, Urbana, Ohio, on June 28, 2021, between approximately 3:11 p.m. and 3:43 p.m.

29.     After the Peoples Saving Bank robbery on July 1, 2021, that same day CRAWMER posted a comment on his Facebook page that he was buying fireworks. The post contained a picture of the exterior of Shelton Fireworks, located in Richmond, Indiana. A review of T-Mobile records revealed that CRAWMER's Mobile Phone was in the area of Shelton Fireworks, Richmond, Indiana, on July 1, 2021, at approximately 3:35 p.m.

30.     On the date of the Richwood Bank robbery, located in Springfield, Ohio, CRAWMER's Mobile Phone was reporting its location in the area of the Richwood Bank during the duration of the bank robbery. A review of T-Mobile records revealed that CRAWMER's Mobile Phone was in the area of the Richwood Bank on August 7, 2021, between approximately 8:01 a.m. to 10:01 a.m. The Richwood Bank robbery occurred on August 7, 2021, at approximately 9:30 a.m. Additionally, further review revealed that CRAWMER's Mobile Phone was in the area of the Richwood Bank days before the robbery on August 5, 2021, between approximately 5:54 a.m. and 1:43 p.m.

31.     On the date of the Civista Bank robbery, located in West Liberty, Ohio, CRAWMER's Mobile Phone was reporting its location in the area of the Civista Bank during the duration of the robbery. A review of T-Mobile records revealed CRAWMER's Mobile Phone was in the area of the Civista Bank on August 17, 2021, between approximately 7:28 a.m. and 9:59 a.m. The Civista Bank robbery occurred on August 17, 2021, at approximately 9:35 a.m.

32.     A review of T-Mobile records for CRAWMER's Mobile Phone further revealed that CRAWMER's Mobile Phone was in contact with phone number 800-214-6094. An open-source search revealed that this number was associated with Budget Car Rentals. A subpoena,

12

issued by the Logan County, Ohio Prosecutor's Office, was served upon Avis Budget Corporate, for rental information associated with CRAWMER. Information returned by Avis Budget Corporate pursuant to said subpoena revealed that on August 11, 2021, CRAWMER rented a white Nissan Altima sedan, bearing New York registration HWV6843. The pickup and return location were listed as 1144 Hebron Road, Heath, Ohio. CRAWMER returned the vehicle on August 20, 2021. A review of T-Mobile records revealed that CRAWMER's Mobile Phone was in the area of Budget Car Rentals, located at 1144 Hebron Road, Heath, Ohio, on August 11, 2021, between approximately 1:01 P.M. to 4:23 p.m. Investigators located the vehicle rented to CRAWMER at the Budget Rental located in Heath, Ohio. Several observations were made regarding the vehicle, to include a black scuff mark on the bottom rear of the rear passenger door and an EZ Pass box visible in the front windshield. Also, the front license plate was held on by Velcro. According to a Budget Rental employee, license plates are not customarily secured by Velcro.

33. These observations are significant as during the Civista Bank robbery detailed above, bank employees observed the suspect arrive in a white sedan, and after committing the robbery, depart in the same vehicle. Surveillance video from the bank showed a white sedan which turned right onto Detroit Street from Sydney Street prior to the bank robbery. On August 17, 2021, prior to the Civista Bank robbery, surveillance video from West Liberty Police Department, located at 201 N. Detroit St., West Liberty, Ohio, approximately 0.2 miles from Civista Bank, captured a white Nissan Altima traveling past the West Liberty Police Department. A review of the surveillance video captured from the West Liberty Police Department revealed a white Nissan Altima with a black scuff mark at the bottom rear of the rear passenger door. Also visible was what appeared to be an EZ Pass box in the front windshield. Also, the vehicle did

13

not appear to have a front license plate. As detailed above, Civista Bank employees stated that the suspect arrived and departed in a white four door car, bearing license plate JIA7018. Law enforcement determined that this license plate was stolen. The registered owner associated with the license plate resided in the 300 block of E. Columbus Ave., Bellefontaine, Ohio. A review of T-Mobile records revealed that CRAWMER's Mobile Phone was in the vicinity of the 300 block of E. Columbus Ave., Bellefontaine, Ohio on August 17, 2021, between approximately 7:42 a.m. and 9:00 a.m.

34.     A state warrant, issued in the Logan County Court of Common Pleas, was served upon Avis Budget Rental for GPS tracking information from the white Nissan Altima that CRAWMER rented from August 11, 2021, through August 20, 2021. A review of the records provided pursuant to the search warrant, revealed that on August 17, 2021, being the date of the Civista Bank robbery, the rental vehicle moved west from the area of Buckeye Lake, Ohio, and arrived in the area of a parking lot on the 100 block of S. Detroit Street, Bellefontaine, Ohio. The next location of the rental vehicle recorded was at 8:58 a.m. wherein the rental vehicle was still in the area of a parking lot located in the 100 block S. Detroit Street, Bellefontaine, Ohio. From this information, the vehicle appeared to be stationary for approximately 51 minutes in the parking lot. This location is located approximately 0.4 miles from the residence of the registered owner associated with the license plate that was stolen and observed by Civista Bank employees as being on the license plate on the suspect's vehicle that arrived and departed from the Civista Bank robbery.

35.     Further review of the Avis Budget Rental GPS tracking records revealed that the rental vehicle later traveled south into West Liberty, Ohio. At approximately 9:36 a.m., minutes prior to the Civista Bank robbery, the rental vehicle reported its location on Sidney Street, West

Liberty, near the intersection of Sidney Street and State Route 68. This location is approximately 0.2 miles from the West Liberty Police Department. As detailed above, West Liberty Police Department surveillance video captured a white Nissan Altima traveling past the West Liberty Police Department. The vehicle captured by the West Liberty Police Department surveillance video had several distinctive features, to include a black scuff mark at the bottom rear of the rear passenger door and an EZ Pass box in the front windshield. These features also matched the white Nissan Altima that CRAWMER previously rented during the time of the Civista Bank robbery.

36.     Additionally, a review of Avis Budget Rental GPS tracking records revealed that at approximately 9:42 a.m., the rental vehicle reported its location near a parking space directly in front of the Civista Bank.

37.     CRAWMER has had several unrelated contacts with law enforcement in 2021. Some of the information given during those contacts is pertinent to this investigation. In early August, 2021, CRAWMER advised that he moved back to the area. Later in August, CRAWMER advised that he might be moving to a house in the Heath area, which would be closer to his girlfriend's job. Based on communications with law enforcement, law enforcement was aware that CRAWMER resided with his girlfriend, A.J.

38.     A review of CRAWMER's Facebook page revealed several pictures of CRAWMER and A.J. together.

39.     An Ohio Bureau of Motor Vehicles search revealed no active vehicle registrations associated with CRAWMER; however, several active registrations are associated with A.J., one of which being a black 2006 Ford Mustang, bearing Ohio registration FOX9916. Further, A.J.'s

address associated with her driver's license was listed as 116 Swainford Drive, Heath, Ohio. A.J.'s driver's license was issued on September 11, 2021.

40.     On September 24, 2021, law enforcement conducted a spot check at 116 Swainford Drive, Heath, Ohio, and at approximately 4:34 p.m., law enforcement observed a black Ford Mustang parked in the driveway in front of the garage of the residence. As detailed above, A.J. had an active registration to a black Ford Mustang.

41.     On September 30, 2021, law enforcement conducted surveillance at 116 Swainford Drive, Heath, Ohio, and at approximately 5:12 p.m., law enforcement observed CRAWMER in the garage of the residence. A dark grey small size Toyota truck was later observed pulling into the driveway.

42.     On October 1, 2021, law enforcement conducted surveillance at 116 Swainford Drive, Heath, Ohio, and at approximately 9:32 a.m., law enforcement observed CRAWMER in the garage of the residence. Also observed was the dark grey Toyota truck in the garage, bearing license plate number JIS8486.

43.     An Ohio Bureau of Motor Vehicles search for license plate JIS8486 resolved to an owner associated with a rental agency. Law enforcement learned that the plate was associated with Avis Budget. Law enforcement learned from Avis Budget Rental employees that A.J. rented a Toyota Tacoma in Heath, Ohio, on September 23, 2021. The rental was extended three times and due back on October 2, 2021.

44.     On October 1, 2021, law enforcement conducted surveillance at 116 Swainford Drive, and at approximately 4:42 p.m., law enforcement observed CRAWMER and A.J. in the driveway of the residence.

16

45.     On October 8, 2021, law enforcement conducted surveillance at 116 Swainford Drive, and at approximately 8:30 a.m., law enforcement observed CRAWMER exit the side door of the residence.

46.     A review of CRAWMER's criminal history revealed several prior convictions for bank robbery and other offenses.   A review of CRAWMER's criminal history revealed the following:

a.   United States District Court Northern District of Alabama (Case No. 5:10-CR-433), convicted of violations of 18 U.S.C. §§ 2113(a) & (b) -- Armed Bank Robbery; 18 U.S.C. § 924(c)(A)(ii) -- Use of a Firearm During a Crime of Violence; 18 U.S.C § 922(g)(1) -- Felon in Possession of a Firearm.

b.   United States District Court of the Southern District of Ohio (Case No. 2:10-CR-059), convicted of violations of 18 U.S.C § 922(g)(1) & 924(a) -- Possession of Ammunition in and Affecting Interstate Commerce by a Convicted Felon.

c.   Multiple state convictions, including a conviction for Breaking and Entering and Grand Theft in 1987; convictions for Breaking and Entering, Theft, Aggravated Robbery with a Gun, Safecracking, Aggravated Burglary, and Aggravated Robbery in 1988; and convictions for Conspiracy to Commit Aggravated Burglary, Aggravated Burglary, and Possession of Criminal Tools in 2003.

47.     Your affiant obtained a federal search warrant (3:21MJ369), authorized, and signed by United States Magistrate Judge Peter B. Silvain, Jr. on October 12, 2021. The search warrant authorized the search of CRAWMER's residence, being 116 Swainford Drive, Heath, Ohio, to search for items of evidence associated with the above-described bank robberies. The warrant further authorized the seizure of computers, cell phones, and other electronic media

17

devices and storage devices that constitute fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 2113, 18 U.S.C § 922(g), and 18 U.S.C. § 924(c)(A)(ii).

48.    On October 15, 2021, FBI agents and officers executed the search warrant at 116 Swainford Drive, Heath, Ohio. As agents initiated contact with the occupants of 116 Swainford Drive, Heath, Ohio, CRAWMER was observed in the garage of the residence. Agents and officers ultimately arrested CRAWMER and placed him into custody pursuant to a federal arrest warrant.

49.    Once the residence was cleared for occupants, agents began a search of the premises. Several evidentiary items were located and seized, including, among other things, two pistols, one of which closely resembled the pistol brandished by the suspect during the Richwood Bank robbery. Several electronic devices were also located within the residence and seized pursuant to the warrant. All of the Subject Devices listed above were located inside the residence of 116 Swainford Drive, Heath, Ohio, and ultimately seized pursuant to the federal search warrant.

50.    The Subject Devices are currently in the lawful possession of the FBI. The Subject Devices were taken during the execution of a federal search warrant for the residence of CRAWMER, being 116 Swainford Drive, Heath, Ohio. Therefore, while the FBI might already have all necessary authority to examine the Subject Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Subject Devices will comply with the Fourth Amendment and other applicable laws.

51.    The Subject Devices are currently in storage at FBI Dayton Resident Agency, 7747 Clyo Road, Centerville, Ohio.  In my training and experience, I know that the Subject Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Subject Devices first came into the possession of the FBI.

## TECHNICAL TERMS

52.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.    Wireless telephone:    A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.    These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.    A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.    In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also

include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some

20

GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

21

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22

53.     Based on my training, experience, and research, I know that the Subject Devices have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, PDA, and data storage various forms.   In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

54.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

55.     There is probable cause to believe that things that were once stored on the Subject Devices may still be stored there, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

56. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Devices because:

24

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review

25

team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

57.    *Nature of examination.*    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Subject Devices to human inspection in order to determine whether it is evidence described by the warrant.

58.    *Manner of execution.*    Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

59.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Subject Devices described in Attachment A to seek the items described in Attachment B.

Further your Affiant sayeth naught.

Nicholas A. Graziosi
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 18th day of October, 2021.

Peter B. Silvain, Jr.
United States Magistrate Judge

27

## ATTACHMENT A

The individual items of property desired to be searched are listed below, collectively the "Subject Devices". Each is currently stored in a secure locked facility located at the FBI Dayton Resident Agency, 7747 Clyo Road, Centerville, Ohio.

    a. Cellular Telephone, Make iPhone, Model 11 Pro (MWAP2LL/A), Serial C39ZT7M8N6XN, IMEI 353237104889093, silver in color ("Device 1");

 

    b. Cellular Telephone, Make iPhone, Model 13 (MLA23LL/A); Serial MM219LDFHR, IMEI 357332360741728, black in color ("Device 2");

 

c. Laptop, Make HP, Model Chromebook (14a-na0031wm), Serial 5CD045GVNJ, gray in color ("Device 3");

 

d. Cellular Telephone, Make Qlink, Model VLE5, Serial 120190600005791, IMEI 869190041354126 ("Device 4");

 

2

e. Tablet, Make Windows, Model 1645, Serial 008875760452; gray in color ("Device 5");

 

f. Tablet, Make iPhone, Model A1416, Serial DYTJ3UV9DJ8T, silver in color ("Device 6"); and

 

3

g.  USB Flash Drive, blue and silver in color with tag, hand written on tag is "Terry Thompson" and "2011-053466" ("Device 7").

 

This warrant authorizes the forensic examination of the Subject Devices for the purpose of identifying the electronically stored information described in Attachment B.

4

## ATTACHMENT B

1.      All records on the Subject Devices described in Attachment A that relate to violations of 18 U.S.C. § 2113, 18 U.S.C § 922(g), and 18 U.S.C. § 924(c)(A)(ii) and involve STEFAN CHADWICK CRAWMER, including:

   a. lists of phone contacts and associates and related identifying information.

   b. communication records to include test messages, SMS, MMS, or any other stores communications, pictures, videos, or other media pertaining to bank robberies or weapons possession;

   c. Pictures, videos, or other media pertaining to bank robberies or weapons possession;

   d. any information related to banks (including names, addresses, phone numbers, or other identifying information);

   e. records of Internet Protocol addresses used;

   f. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

   g. any records pertaining to historical location information for the Subject Devices;

   h. any information recording CRAWMER's schedule or travel from June 15, 2021 to the present;

   i. all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Subject Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.